UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WILLIAM J. WIEMANN; WILLIAM J. WIEMANN HOLDINGS, LLC; and BILL WIEMANN MOTOR SPORTS, LLC, | Case No. 07-CV-3929 (PJS/RLE) |
| Plaintiffs, | ORDER |
| v. | |
| FRED ENGELHART, d/b/a Engelhart Performance, | |
| Defendant. | |

Michael S. Montgomery, MONTGOMERY GOFF & BULLIS, PC, for plaintiffs.

This matter is before the Court on plaintiffs' unopposed motion for summary judgment. For the reasons given below, the Court grants the motion in part and denies it in part.

I. BACKGROUND

Defendant Fred Engelhart, a resident of the small town of Elkton, Minnesota, is in the business of buying and selling vintage muscle cars — some of which are worth hundreds of thousands of dollars. Engelhart has been acquainted with plaintiff William J. Wiemann, who collects vintage cars, for about four or five years. Engelhart Dep. 37. Before the transaction at issue in this case, Engelhart had purchased vintage cars from Wiemann on four previous occasions. Engelhart Dep. 38. Wiemann's cars were usually high-end, expensive vehicles, and Engelhart would typically not have cash on hand to pay for them. Thus, Engelhart would often resell Wiemann's cars to third parties and then use the cash he received from the third parties to pay Wiemann. Engelhart Dep. 38, 40. Engelhart and Wiemann had in the past discussed the fact that Engelhart sometimes obtained financing for the cars by selling them to third parties. Engelhart Dep. 40-41.

In April 2007, Engelhart agreed to buy a number of vintage cars from plaintiff Bill Wiemann Motor Sports, LLC, a North Dakota corporation controlled by Wiemann.[1] The parties executed a one-page agreement on April 17, 2007. *See* Pls.' Ex. A. There were three parts to the agreement:

*First*, Engelhart was to pay $2 million for four cars: a 1971 Dodge Hemi Challenger Mr. Norm's; a 1970 brown Coronet Convertible; a 1969 green Coronet Convertible; and a fourth car that has since been returned to Wiemann and is not at issue in this case. *See* Pls.' Ex. A. The down payment on these four cars was due by April 23, and the balance was due by May 10.[2]

*Second*, Engelhart was also to pay $225,000 for a 1965 red Z16 Chevelle (as well as other sums of money for yet more cars not at issue here). The contract was not entirely clear about when this payment was due, stating only: ". . . DUE IN 60DAYS. FROM PURCHASE DATE OF APRIL 17, 2007 DUE DATE IS JUNE 15TH, 2007. ON OR BEFORE WHEN CARS ARE SOLD." [*Sic*.] It appears that the parties meant to say that payment for the car was due in sixty days, unless the car was sold before then, in which case payment for the car was due on or before the date on which the car was sold.

*Third*, Engelhart was also to take delivery of a 1970 red Prostreet Challenger (and one other car, again not at issue here) to sell on Wiemann's behalf. The parties did not agree on a price or a commission. Instead, the contract stated: "ALSO A 1970 RED PROSTREET CHALLENGER . . . WILL BE SHIPPED ALONG. AND BEST EFFORTS TO SELL THESE

---

[1]The third plaintiff, William J. Wiemann Holdings, LLC, held title to the cars. The Court will refer to plaintiffs collectively as "Wiemann."

[2]The contract also lists a fifth car with a separate purchase price that Wiemann never delivered to Engelhart. Engelhart Dep. 68.

CARS TO BE NEGOIATED [*sic*] AT TIME OF SALE BY ENGELHART PERF[ORMANCE]. FULL RETURN OF THESE 2 CARS ARE ACCEPTED IF NOT SOLD." There are some handwritten notations around this text, but they are difficult to decipher and their meaning is unclear.

Wiemann delivered the cars to Engelhart, but Engelhart never paid Wiemann for the cars. Wiemann Aff. ¶ 9. Wiemann eventually contacted Engelhart to arrange for the return of the cars, at which point Engelhart admitted that he had sold three of them to third parties and pocketed the money. Wiemann Aff. ¶¶ 10-11. Wiemann later learned that Engelhart had also sold the other two cars at issue to third parties and likewise kept all of the proceeds for himself. Wiemann Aff. ¶ 12. Wiemann now brings claims for breach of contract, fraud, and conversion against Engelhart.[3]

## II. ANALYSIS

### *A. Standard of Review*

Wiemann's motion for summary-judgment is unopposed. But an unopposed motion for summary judgment is not necessarily a winning motion for summary judgment. "Even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim." *Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993). The district court must do so by applying the rules that apply to all summary-judgment motions.

---

[3]Wiemann also sued two of the individuals to whom Engelhart sold the cars. The Court previously dismissed one of the them for lack of personal jurisdiction, and the parties later stipulated to the dismissal of the other without prejudice. Finally, at oral argument Wiemann agreed to dismiss his replevin claim against Engelhart without prejudice.

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party. *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir. 2006). In considering a motion for summary judgment, a court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004). That is true even if the non-moving party does not oppose the summary-judgment motion.

## B. Wiemann's Claims

### 1. Breach of Contract

To prevail on a breach-of-contract claim, a plaintiff must show (1) the existence of a contract; (2) performance of conditions precedent by the plaintiff; (3) breach; and (4) damages. *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008); *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 576-79 (Minn. Ct. App. 2004).

There is no dispute that Wiemann and Engelhart had a contract pursuant to which Engelhart agreed to pay $225,000 for the 1965 red Z16 Chevelle and $2 million for the 1971 Dodge Hemi Challenger Mr. Norm's, the 1970 brown Coronet Convertible, the 1969 green Coronet Convertible, and a fourth car. There is also no dispute that Wiemann delivered these

cars, and there is no dispute that Engelhart never paid for them. Wiemann is thus entitled to prevail on his breach-of-contract claim with respect to the 1965 red Z16 Chevelle, the 1971 Dodge Hemi Challenger Mr. Norm's, the 1970 brown Coronet Convertible, and the 1969 green Coronet Convertible.

With respect to the 1970 red Prostreet Challenger, however, the Court cannot say that the parties had a contract that was breached. According to the terms of the written agreement (which are ungrammatical and difficult to understand), it appears that, at most, Engelhart agreed to use his best efforts to sell the car, and the parties agreed to negotiate some kind of deal at the time of sale. It is not clear whether Engelhart was supposed to sell the car first and then negotiate a commission or whether Engelhart was supposed to include Wiemann in the negotiations for the sale of the car. Either way, however, the written contract with respect to the 1970 Prostreet Challenger appears to be too indefinite to constitute an enforceable contract. The Court therefore denies Wiemann's motion with respect to his breach-of-contract claim as it relates to the 1970 Prostreet Challenger.

## 2. Fraud

To prevail on a claim of fraud, a plaintiff must show that the defendant knowingly or recklessly made a materially false representation with the intent to induce the plaintiff to act, and that the plaintiff in fact was induced to act and suffered damages in reliance on the representation. *Florenzano v. Olson*, 387 N.W.2d 168, 174 n.4 (Minn.1986). The representation must be of a past or existing fact that is susceptible of knowledge. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). A defendant's representation that he intends to perform a future act can constitute fraud if, at the time the defendant makes the

representation, he does not, in fact, intend to perform the future act. But the fact that a defendant fails to fulfill a promise is not sufficient to prove that the defendant committed fraud when he made the promise:

> It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place. It is true that a misrepresentation of a present intention could amount to fraud. However, it must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made.

*Id.* at 368-69 (quoting *Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974)). In other words, the fact that a defendant did not fulfill a promise does not mean that he lied when he said that he intended to fulfill the promise. After he made the promise, he may have changed his mind, perhaps because he learned something new, or because events unfolded in a way he did not expect, or because he simply decided that he had struck a bad bargain.

Wiemann contends that, by signing the contract, Engelhart fraudulently represented that he intended to pay for the cars when he in fact had no intention of doing so. Wiemann argues that it is undisputed that Engelhart did not have the money to pay for the cars when he entered into the contract. *See* Engelhart Dep. 74. Consequently, Wiemann contends, Engelhart's representation that he intended to pay for the cars must have been fraudulent.

A jury might very well agree with Wiemann, but having examined the record (and in particular Engelhart's deposition testimony), the Court cannot agree that Wiemann has established fraud as a matter of law. As Engelhart testified, the parties had a course of dealing in which Engelhart would often obtain financing for his purchase of Wiemann's cars by reselling the cars to third parties. With respect to the transaction at issue in this case, Engelhart testified

that, at the time he entered into the transaction, he expected to be able to obtain the money through a combination of selling the cars that were the subject of the agreement as well as "other things." Engelhart Dep. 74-75. Presumably, by "other things," Engelhart meant that he would raise cash by selling some of the other cars in his inventory. (Engelhart perpetually bought and sold vintage muscle cars.)

Nothing in the contract would require a reasonable jury to reject Engelhart's testimony. As to the 1971 Dodge Hemi Challenger Mr. Norm's, the 1970 brown Coronet Convertible, and the 1969 green Coronet Convertible, Engelhart was not required to make the down payment until April 23 (six days after signing the contract) and not required to pay the balance until May 10 (over three weeks after signing the contract). The contract was unclear about when Engelhart had to pay the $225,000 for the 1965 red Z16 Chevelle, but, at the earliest, the payment was due sixty days after the contract was signed (unless the car was sold before then, in which case Engelhart would have the proceeds from that sale). Finally, nothing in the contract remotely suggests that Engelhart must immediately pay for the 1970 red Prostreet Challenger. In sum, Engelhart did not promise to pay for the cars immediately, and thus the fact that he did not have the resources to pay for the cars immediately does not mean that he committed fraud.

Wiemann also argues that, because Engelhart failed to respond to Wiemann's requests for admissions, he has admitted committing fraud. Wiemann *could* have asked Engelhart to admit that, at the time that he signed the contract, he had no intention of performing. But that is not what Wiemann asked. Instead, the pertinent request for admission asked Engelhart to "[a]dmit or deny that Defendant committed fraud by reselling, trading or otherwise transferring Plaintiffs' vehicles to other individuals or other third parties without Plaintiffs' knowledge and without

paying for said vehicles." *See* Pls.' Ex. E at 5. That is an entirely different point. Although Engelhart's failure to respond to this request for admission establishes that Engelhart sold Wiemann's vehicles without Wiemann's knowledge, *see* Fed. R. Civ. P. 36(a)(3), (b), it does not establish that Engelhart did not intend to pay for the vehicles at the time he entered into the contract.

In short, based on the record submitted to the Court, a reasonable jury could find that Engelhart intended to pay for the cars at the time that he signed the contract. Wiemann's motion for summary judgment on his fraud claim is therefore denied.

### 3. Conversion

To prevail on a claim of conversion, a plaintiff must show that the defendant willfully interfered with the plaintiff's personal property without lawful justification, thus depriving the plaintiff of use and possession. *Williamson v. Prasciunas*, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003).

Wiemann contends that Engelhart committed the tort of conversion by reselling the cars before paying Wiemann. But only with respect to the 1965 red Z16 Chevelle did the contract require Engelhart to pay Wiemann before or at the same time as he resold the car to a third party. Engelhart indisputably did not do so, and therefore, with respect to that car, Wiemann is entitled to summary judgment on his conversion claim.

With respect to the remaining cars, the Court cannot say that Engelhart's act of reselling the cars before paying Wiemann was without lawful justification. As discussed above, in the parties' previous course of dealing it was normal for Engelhart to resell cars before paying Wiemann. In fact, that appears to be how Engelhart financed these multi-million-dollar deals —

which makes sense, as nothing in the record suggests that Engelhart was likely to have millions of dollars of ready cash at his disposal. Given this course of dealing, a jury could find that Engelhart sold the other cars with Wiemann's implicit permission, even though the sales took place without Wiemann's knowledge. Indeed, the fact that the parties explicitly limited Engelhart's right to resell the 1965 red Z16 Chevelle suggests that the parties did not intend to impose any such limitation on the other cars. The Court therefore denies Wiemann's motion with respect to the other cars.[4]

*C. Damages*

As discussed above, Wiemann is entitled to summary judgment on his breach-of-contract claim with respect to four of the cars: the 1965 red Z16 Chevelle, the 1971 Dodge Hemi Challenger Mr. Norm's, the 1970 brown Coronet Convertible, and the 1969 green Coronet Convertible. Wiemann is also entitled to summary judgment on his conversion claim with respect to the 1965 red Z16 Chevelle.

Wiemann argues, and the Court agrees, that the measure of damages for the 1965 red Z16 Chevelle is the contract price of $225,000. Damages for the other three cars are a bit more

---

[4] Wiemann undoubtedly will be able to hold Engelhart liable for selling the 1970 Prostreet Challenger and keeping all of the proceeds for himself, but not on the theory that the mere act of selling the car before paying for it constituted conversion. The Court also notes that, even if Wiemann were entitled to summary judgment on liability for the 1970 Prostreet Challenger, the Court could not enter summary judgment on the issue of damages for that car. Wiemann claims damages of $47,500, arguing that Engelhart acknowledged selling the car to a third party for that price. Wiemann cites Engelhart's deposition to support this price, but although Engelhart acknowledged selling the car, Engelhart could not remember the specific terms of the deal. *See* Engelhart Dep. 89-91. Wiemann's counsel made representations about the price to Engelhart during the deposition, but statements of counsel are obviously not evidence. *Exeter Bancorporation, Inc. v. Kemper Sec. Group, Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995). There is thus no competent evidence before the Court concerning the value of the 1970 Prostreet Challenger.

difficult to determine because they were sold for a group price with a fourth car that was later returned. Engelhart testified, though, that he sold the 1971 Dodge Hemi Challenger Mr. Norm's for cash and property worth a total of $650,000 and that he similarly sold the two convertibles for cash and property worth a total of $1,050,000.[5] Engelhart Dep. 114, 123-26. Wiemann argues, and Engelhart has not disputed, that this is a reasonable measure of Wiemann's damages for those three cars. Wiemann is therefore entitled to recover a total of $1,925,000 with respect to the 1965 red Z16 Chevelle, the 1971 Dodge Hemi Challenger Mr. Norm's, the 1970 brown Coronet Convertible, and the 1969 green Coronet Convertible.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion for summary judgment [Docket No. 62] is GRANTED IN PART and DENIED IN PART.

2. The motion is GRANTED with respect to plaintiffs' breach-of-contract claim insofar as that claim relates to the following cars: the 1965 red Z16 Chevelle, the 1971 Dodge Hemi Challenger Mr. Norm's, the 1970 brown Coronet Convertible, and the 1969 green Coronet Convertible.

3. The motion is GRANTED with respect to plaintiffs' conversion claim insofar as that claim relates to the 1965 red Z16 Chevelle.

---

[5]At his deposition, Engelhart could not remember the precise purchase price for the convertibles but testified that it was either $1,050,000 or $1,150,000. Engelhart Dep. 123-26. At oral argument, when the Court asked Wiemann to explain how he calculated his damages, Wiemann used the lower figure.

4. Plaintiffs are entitled to recover damages as follows:

   a. $225,000 for the 1965 red Z16 Chevelle;

   b. $650,000 for the 1971 Dodge Hemi Challenger Mr. Norm's;

   c. $1,050,000 for the 1970 brown Coronet Convertible and the 1969 green Coronet Convertible.

5. Plaintiffs' motion is DENIED in all other respects.

6. Plaintiffs' claim for replevin is DISMISSED WITHOUT PREJUDICE.

Dated: July 24, 2009

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge